UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALICIA PURCELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:13 CV 386 |
| | ) |
| INDIANA UNIVERSITY—SOUTH | ) |
| BEND AND ITS CHANCELLOR, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on defendants Indiana University (improperly sued as "Indiana University South Bend"), the Indiana University Board of Trustees, the President of Indiana University, Michael A. McRobbie, the Chancellor of Indiana University South Bend, Una Mae Reck, and the Dean of the Raclin School of the Arts, Marvin Curtis's (collectively "defendants") motion for partial dismissal of plaintiff Alicia Purcell's amended complaint. (DE # 29.) For the following reasons, that motion is granted in part and denied in part.

**I.    Facts and Background**

From 2004 to 2006, plaintiff was employed at Indiana University - South Bend's ("Indiana University") Ernestine M. Raclin School of the Arts ("the Raclin School") as a visiting lecturer.[1] (DE # 27 at ¶ 8.) In 2006, plaintiff was hired as a full-time voice

---

[1] These facts, which are accepted as true, are taken from plaintiff's amended complaint. (DE # 27.)

lecturer at the Raclin School, and held that position until her termination in 2012. (*Id.* at ¶ 9.) With both of these positions, plaintiff was responsible for teaching voice studio and related courses to undergraduate and graduate students at Indiana University. (*Id.* at ¶ 10.) One hundred percent of plaintiff's time was devoted to teaching. (*Id.* at ¶ 11.)

In April 2011 (*see* DE # 27-1 at 1), plaintiff was notified that her contract to teach was not being renewed for the 2012-2013 academic year.[2] (DE # 27 at ¶ 15.) This decision was based, in part, on negative reviews by Marvin Curtis, Dean of the Raclin School.[3] (*Id.*) Plaintiff filed a grievance regarding the non-renewal of her contract on January 31, 2012 with the Indiana University Faculty Board of Review. (*Id.* at ¶ 17.) The Faculty Board of Review concluded that Curtis's criticisms of plaintiff were inappropriate and unprofessional.[4] (*Id.* at ¶ 25.) Despite the Faculty Board of Review's

---

[2] Plaintiff does not allege this in her complaint, but apparently her position as a lecturer at Indiana University was reviewed for renewal on a yearly basis.

[3] Plaintiff's complaint does not make clear who ultimately made the decision not to renew her contract. When reading the document attached to the complaint with the complaint itself, it appears that Curtis recommended to the Chancellor of Indiana University South Bend that plaintiff's contract not be renewed, and the Chancellor was the person that ultimately made the decision. (*See* DE # 27-1 at 1; DE # 27 at ¶¶ 15, 25.)

[4] Plaintiff's complaint does not make clear whether the Faculty Board of Review's opinion reversed the original decision to not renew plaintiff's contract. When reviewing the document attached to the complaint, it appears that the Faculty Board of Review's report did not actually overturn the original decision, but, instead, recommended to the Chancellor that the decision be overturned. (DE # 27-1 at 13-14.)

2

conclusion, the Chancellor of Indiana University upheld the decision to not renew plaintiff's contract.[5] (*Id.* at ¶ 27.)

Plaintiff, who was over the age of 40 at the time of her termination, was paid $38,260.00 in salary for 2011. (*Id.* at ¶¶ 28, 30.) While plaintiff was employed by Indiana University, a female colleague under the age of 40 was hired as a lecturer at the Raclin School and paid $36,000 annually. (*Id.* at ¶ 31.) Additionally, four men, all under the age of 40, were hired as lecturers at the Raclin School and paid a salary of $40,000 annually. (*Id.* at ¶ 32.) Plaintiff's vacated position was filled by someone under the age of 40 at the time she was hired. (*Id.* at ¶ 35.)

On June 11, 2012, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (DE # 37-1); *see also Moses v. U.S. Steel Corp.*, Cause No. 2:11–CV–385, 2012 WL 1066769, at *1 (N.D. Ind. Mar. 28, 2012) (taking judicial notice of charge of discrimination without converting motion to dismiss to motion for summary judgment). Plaintiff eventually filed this suit, alleging violations of the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and Article I, Section 23 of the Indiana Constitution. (DE # 27.) Defendants have now moved to dismiss plaintiff's ADEA, Title VII, and Indiana constitutional claims. (DE # 29.)

---

[5] Additionally, although she does not allege this in her complaint, plaintiff, in her response brief, alludes to the fact that the president of Indiana University eventually affirmed the Chancellor's decision to affirm the original decision to not renew plaintiff's contract. (DE # 33 at 7.)

3

## II. Legal Standard

Defendants have moved to dismiss plaintiff's claims under RULE 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE for failure to state a claim upon which relief may be granted. A judge reviewing a complaint under a RULE 12(b)(6) standard must construe it in the light most favorable to the non-moving party, accept well-pleaded facts as true, and draw all inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Reger Dev., LLC v. Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010). Under the liberal notice-pleading requirements of the FEDERAL RULES OF CIVIL PROCEDURE, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy RULE 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011); *Twombly,* 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994) among other authorities). As the Seventh Circuit recently explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

However, the plaintiff does not need to plead facts that establish each element of a cause of action and, "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan*, 40 F.3d at 251. Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III. Analysis

### A. Plaintiff's ADEA Claim - Immunity

Defendants first argue that plaintiff's ADEA claims must be dismissed against all defendants, because, under the Eleventh Amendment, "the states and their entities are immune from private damage actions or suits for injunctive relief brought in federal court." (DE # 30 at 4.) In her response brief, plaintiff concedes that an ADEA claim cannot be "brought in federal court against Indiana University," but argues that she still has a valid ADEA claim against the individual defendants. (DE # 33 at 5.)

Because plaintiff concedes that her ADEA claim cannot survive against Indiana University, defendants' motion to dismiss will be granted as it relates to defendant

5

Indiana University.[6] The court will address plaintiff's ADEA claim as it relates to the individual defendants later in the opinion.

### B. Plaintiff's Title VII and ADEA Claims - Timeliness

Defendants next argue that plaintiff's claims under the ADEA and Title VII must be dismissed because plaintiff did not file her charge of discrimination with the EEOC until approximately 400 days after the alleged adverse employment action took place.[7] (DE # 30 at 5.) A plaintiff claiming discrimination must file a charge of discrimination with the EEOC within 300 days of the alleged adverse employment action for a Title VII claim and within 180 days of the alleged adverse employment action for an ADEA claim. 42 U.S.C. § 2000e–5(e); 29 U.S.C. § 626(d)(1)(A); *Adams v. City of Indianapolis,* 742 F.3d 720, 729-30 (7th Cir. 2014) (Title VII); *Levin v. Madigan,* 692 F.3d 607, 615 (7th Cir. 2012) (ADEA); *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836 (7th Cir. 2008) (Title VII); *McCombs v. Federal Exp. Corp.*, 965 F.Supp.2d 1018, 1022 (N.D. Ind. 2013) ("In Indiana, plaintiffs pursuing a cause of action under the ADEA must file a charge with the EEOC within 180 days after the alleged unlawful practice occurred."). If a charge is

---

[6] Plaintiff has not responded to defendants' argument (DE # 30 at 4) that Eleventh Amendment immunity applies to the Indiana University Board of Trustees. Therefore, plaintiff's ADEA claim will be dismissed against the Board of Trustees as well. *Tyler v. Trustees of Purdue Univ.,* 834 F.Supp.2d 830, 845 (N.D. Ind. 2011) (concluding that "Purdue University and its Board of Trustees are state entities immune to suit[]" with respect to ADEA claim).

[7] Defendants make clear that this argument only pertains to plaintiff's allegations of discrimination with regard to the non-renewal of her employment contract, and not to plaintiff's allegations regarding unequal pay. (DE # 37 at 5; DE # 27 at ¶¶ 28-32.)

6

not timely filed, "the employee may not challenge the [alleged unlawful employment] practice in court." *Chaudhry*, 546 F.3d at 836.

Defendants contend that the clock to file an EEOC charge began to run in April 2011 when plaintiff was notified that her employment contract would not be renewed for the 2012-2013 academic year. (DE # 30 at 5-8.) In response, plaintiff argues that the clock did not begin to run until November 2, 2012, when the President of Indiana University upheld the Chancellor's decision to affirm the original decision to not renew plaintiff's contract for another year. (DE # 33 at 7.) Because plaintiff filed her charge of discrimination on June 1, 2012, if defendants are correct that the clock to file an EEOC charge began to run in April 2011, then plaintiff's claims would be barred for failure to timely file an EEOC charge, as the June 1, 2012 charge would have been filed well over 300 days after the adverse employment action, making both her ADEA and Title VII claims untimely.

Under Seventh Circuit precedent, two elements must be shown in a discriminatory discharge case to establish the date of the "unlawful employment practice." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004). First, "there must be a final, ultimate, non-tentative decision to terminate the employee." *Id.* Second, "the employer must give the employee 'unequivocal' notice of its final termination decision." *Id.* Additionally, "because the decision not to reverse an adverse employment decision is not a fresh act of discrimination, an employee cannot toll the limitations period by pursuing grievance proceedings." *Williamson v. Indiana*

7

*University*, 345 F.3d 459, 463 (7th Cir. 2003); *see also Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372-73 (7th Cir. 2001) (same).

Plaintiff takes the position that the decision she received in April 2011 that her contract would not be renewed for another year was part of a larger, extended reappointment process that had multiple levels of review:

> The policy of IUSB, and that of Indiana University in general, is to have a reappointment process, which includes the ability to appeal the decision of non-reappointment made by the Dean. . . . In the present case, the appeal process was a part of the re-appointment process as a whole. Therefore, Ms. Purcell's actual notice of non-reappointment did not come until the President of Indiana University notified her on November 2, 2012 that he was upholding the Chancellor's decision to overrule the Faculty Board of Review. As such, the final decision for non-reappointment, and therefore the last adverse employment action was on November 2, 2012, or at least until her last date of actual employment June 30, 2012.

(DE # 33 at 6-7.)

Thus, plaintiff's position on this issue appears to be that every decision to not renew a teaching contract is reviewed through the grievance process, regardless of whether an employee requests an appeal. The problem with this argument is that the allegations in plaintiff's complaint make clear that *she* was the one that initiated the review process, and there is nothing to indicate that the review of the decision was somehow automatic. (DE # 27 at § 17 ("Purcell grieved her non-renewal through the IU South Bend Faculty Board of Review . . . on January 31, 2012.")); (DE # 27-1 at 1 ("On January 31, 2012 . . . [plaintiff] . . . brought a grievance to the Faculty Board of Review (FBR) against Dean [Curtis] . . . contesting the decision not to reappoint her for the 2012-2013 academic year.")). Additionally, plaintiff neither alleges nor argues that the April

8

2011 decision would not have taken effect had she not filed a grievance appealing the decision.

Plaintiff also argues that the statute of limitations did not begin to run in April of 2011 because she "did not allege the reappointment decision alone was the only discriminatory act, but rather provided many discriminatory actions taken by Defendants within the EEOC charge . . . ." (DE # 22 at 8.) She goes on to specifically list the Chancellor's decision to not accept the Faculty Board of Review's recommendation that plaintiff be reappointed. (*Id.*) The Chancellor's decision affirming the original decision to not renew plaintiff's contract, however, was not a new act of discrimination that would toll the statute of limitations. *Williamson*, 345 F.3d at 463 ("[B]ecause the decision not to reverse an adverse employment decision is not a fresh act of discrimination, an employee cannot toll the limitations period by pursuing grievance proceedings."); *Lever v. Northwestern Univ.,* 979 F.2d 552, 556 (7th Cir. 1992) ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.").[8]

---

[8] Plaintiff also argues that her charge was not untimely because the first review body, the Faculty Board of Review, reversed the original decision. (DE # 33 at 8.) As noted above, it is not clear from the allegations in plaintiff's complaint whether the Faculty Board of Review actually overturned the original decision or just recommended to the Chancellor that the original decision be overturned. The document plaintiff attached to her complaint makes it appear that the Faculty Board of Review's opinion was simply a recommendation to the Chancellor. (DE # 27-1 at 13-14.) Regardless of whether the Faculty Board of Review's decision actually overturned the original decision, however, plaintiff has failed to cite any authority to support the argument that a favorable appellate decision that is ultimately reversed somehow tolls the statute of limitations, and it therefore fails.

9

Beyond noting the Chancellor's decision to affirm the original decision despite the Faculty Board of Review's opinion recommending the decision be reversed, plaintiff does not elaborate on what discriminatory acts she contends somehow make her EEOC charge regarding the non-renewal of her employment contract timely. (DE # 33 at 8.) As defendants point out in their reply brief (DE # 37 at 5), their motion to dismiss plaintiff's ADEA and Title VII claims relates to the decision to not renew plaintiff's contract, but does not extend to those claims as they relate to any wage disparities between plaintiff and her colleagues. Although the court cannot be sure, plaintiff may be referring to her wage disparity theory with this argument. But, in any event, plaintiff's argument that the statute of limitations did not begin to run in April 2011 because of later acts of discrimination fails as it relates to the reappointment decision because "the refusal to undo a discriminatory decision is not a fresh act of discrimination." *Lever,* 979 F.2d at 556.

Plaintiff further argues that the fact that she was permitted to teach another year after receiving notice that her contract would not be renewed and the fact that there was an appeals process available to her gave her the impression that the initial decision was not final. (DE # 33 at 8.) The possibility of review of an adverse decision and the fact that the harmful effects of that decision are not felt until later, however, are not enough to toll the start of the limitations period. *Del. State Coll. v. Ricks,* 449 U.S. 250, 258 (1990). ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods."); *see also*

*Rzepiennik v. Archstone-Smith, Inc.*, 331 F. App'x 584, 588-89 (10th Cir. 2009) ("A discrete adverse action 'takes place' when a decision is made and communicated to the plaintiff, even if the effects of the action do not occur until later."). Plaintiff's argument therefore fails.

In sum, the court concludes that plaintiff's appeal of the decision to not renew her contract did not toll the statute of limitations, and, therefore, the facts alleged in plaintiff's complaint establish that the statute of limitations began to run in April 2011. *Williamson*, 345 F.3d at 463. Plaintiff's EEOC charge was filed over 300 days after plaintiff received notice of the adverse employment decision, and plaintiff's EEOC charge was therefore not timely filed. Defendants' motion to dismiss will be granted as it relates to plaintiff's ADEA claim and plaintiff's Title VII claim to the extent those claims allege discrimination in the decision to not renew her employment contract. Those claims will proceed under the wage disparity theory discussed above. *See supra* note 7.

**C. Plaintiff's Title VII and ADEA Claims - Individual Liability**

Defendants next argue that plaintiff's Title VII and ADEA claims must be dismissed, to the extent that plaintiff is asserting those claims against any of the individual defendants in their individual capacities. (DE # 30 at 8.) As noted earlier, plaintiff's ADEA claim will be dismissed as it relates to Indiana University and the Indiana University Board of Trustees. Additionally, the only part of plaintiff's Title VII

and ADEA claims that remain is plaintiff's assertion that she was paid less than her younger, male colleagues.

Defendants argue (*id.*), correctly, that there is no individual liability under Title VII or the ADEA. *See EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1279–82 (7th Cir. 1995); *Williams v. Banning,* 72 F.3d 552, 553–55 (7th Cir. 1995); *Stone v. Board of Trustees of Northern Illinois University,* No. 13 C 04089, 2014 WL 3845164, at *3 (N.D. Ill. Aug. 5, 2014) ("[I]t is well-established in the Seventh Circuit that neither Title VII nor the ADEA permit individual liability."). In response, plaintiff relies on *Hafer v. Melo*, a case in which the Supreme Court held that state police officers can be individually liable under 42 U.S.C. § 1983. 502 U.S. 21, 31 (1991). Plaintiff directs the court to the definitions of "employer" and "person" under Title VII and the ADEA, and the definition of "person" under Section 1983, and argues that "when [the Supreme Court] held [in *Hafer*] that state officials sued in their individual capacities are 'persons' under [Section 1983] . . . it would also follow that this holding remains true for state officials sued in their individual capacities under the ADEA, and likewise Title VII." (DE # 33 at 11-12.)

Given the Seventh Circuit's clear direction on this matter, however, the court declines to extend liability under Title VII or the ADEA to individuals. *Banning,* 72 F.3d at 553–55; *see also Smith v. Bray,* 681 F.3d 888, 896 n.2 (7th Cir.2012) ("One key difference between § 1981 and Title VII is that the latter authorizes suit only against the employer as an entity rather than against individual people who are agents of the employer."); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37,* 260 F.3d 602, 610 n. 2 (7th Cir.2001)

12

("[W]e have suggested that there is no individual liability under the ADEA."); *Cianci v. Pettibone Corp.,* 152 F.3d 723, 729 (7th Cir.1998) ( "[I]ndividual supervisors who are not otherwise employers cannot be sued under Title VII or the ADEA."). Plaintiff has not put forth any argument that any of the individual defendants in this case meet the definition of "employer" under either Title VII or the ADEA. Therefore, to the extent that plaintiff brings her Title VII and ADEA claims regarding a wage disparity against any of the individual defendants, those claim will be dismissed.

Because plaintiff's ADEA claim is being dismissed against Indiana University, the Indiana University Board of Trustees, and the individual defendants, that claim will be dismissed in its entirety. Plaintiff's Title VII claim will also be dismissed as it relates to the individual defendants. Therefore, the only portion of plaintiff's Title VII claim that remains is the theory regarding the alleged wage disparity with her male colleagues, and that claim will only proceed against Indiana University and the Indiana University Board of Trustees.[9]

**D. Plaintiff's Indiana Constitutional Claim**

In her amended complaint, plaintiff alleges that defendants violated Article I Section 23 of the Indiana Constitution by paying her less that her "similarly titled and

---

[9] Defendants also argue that plaintiffs ADEA and Title VII claims against Indiana University South Bend's Chancellor and Indiana University's President in their individual capacities must be dismissed because neither were included in plaintiff's EEOC charge. (DE # 30 at 9.) Because the court will dismiss plaintiff's ADEA claim in its entirety and has determined that there is no individual liability under Title VII, it need not address defendants' argument on this issue.

performing colleagues." (DE # 27 at 9-10.) Article I Section 23 of the Indiana Constitution states: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

In their motion to dismiss, defendants argue that plaintiff's Indiana constitutional claim must be dismissed because "[a] review of the cases addressing alleged violations of Art. I, § 23 shows that only legislative-type conduct – i.e., a statute, local ordinance, or rule or policy affecting more than one person – promulgated by a government actor is subject to a privileges and immunities challenge." (DE # 30 at 11.) In response, plaintiff argues that "although defendants claim that the case law has generally included some statute, local ordinance, or at least a rule or policy, it does not follow that state actions can only be actions that deal with statutes, local ordinances, rules[,] or policies. The decision by IUSB to pay [plaintiff] differently than similarly situated titled and performing colleagues was an 'action' by IUSB, a state action." (DE # 33 at 16.)

Defendants have failed to direct the court to any authority that establishes that the conduct plaintiff complains about in her complaint cannot form the basis for a claim under Section 23. Because defendants have failed to provide the court with any authority that directly supports their position, and because "[t]he requirements of Article 1, § 23 govern not only state statutes, but also the enactments and actions of county, municipal, and other governmental agencies and their equivalents[,]" *Dvorak v.*

*City of Bloomington*, 796 N.E.2d 236, 238 (Ind. 2003), defendants' motion to dismiss will be denied as it relates to that claim.

There is a problem with plaintiff's Section 23 claim that neither party addresses. The only relief plaintiff seeks in her amended complaint is monetary damages. (DE # 27 at 10.) "[N]o Indiana court[,]" however, "has explicitly recognized a private right of action for monetary damages under the Indiana Constitution." *Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007). Indiana Federal District Courts have routinely dismissed claims for monetary damages under Indiana Constitution, including claims under Article I Section 23, because no cause of action for monetary damages exists under the Indiana Constitution. *Grund v. Indiana Dep't of Correction*, No. 2:12–cv–00038, 2014 WL 3900620, at *2 (S.D. Ind. Aug. 11, 2014) ("Any claim based on an asserted violation of the Indiana Constitution is dismissed for failure to state a claim upon which relief can be granted because there is no private cause of action for damages under the Indiana Constitution."); *Pelham v. Albright*, No. 3:11 CV 99, 2014 WL 321305, at *2 (N.D. Ind. Jan. 28, 2014) ("The Indiana Constitution provides no private right of action for damages."); *Smith v. Ciesielski*, 975 F.Supp.2d 930, 946-47 (S.D. Ind. 2013) (dismissing Article I, Section 23 claim).

Because neither party addresses this issue in their brief, however, this issue is better left for a later dispositive motion, when both parties will have a chance to address it. In sum, defendants' motion to dismiss will be denied as it relates to plaintiff's Indiana constitutional claim.

## IV. Conclusion

For the foregoing, reasons, defendants' motion to dismiss is **GRANTED IN PART and DENIED IN PART.** Plaintiff's ADEA claim is dismissed in its entirety. Plaintiff's Title VII claim is dismissed against the individual defendants and dismissed as it relates to the decision to not renew plaintiff's employment for another year of service as a lecturer. Plaintiff's Title VII claim will proceed against Indiana University and the Indiana University Board of Trustees under plaintiff's theory regarding the alleged pay disparity between plaintiff and her male colleagues. This case will also proceed with plaintiff's claims under the Indiana Constitution and the Equal Pay Act.

**SO ORDERED.**

Date: September 17, 2014

s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT