UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ALICIA PURCELL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13 CV 386 |
| | ) | |
| INDIANA UNIVERSITY - SOUTH | ) | |
| BEND AND ITS CHANCELLOR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

**I.    BACKGROUND**

In the summary that follows, the court refers only to undisputed facts[1], or, if there is a dispute, notes that it exists and relies on the version of the fact, or inference therefrom, that is most favorable to plaintiff. This summary provides an overview. Additional relevant undisputed facts will be referred to in the analysis that follows.

Starting in 2004, plaintiff was employed as a visiting lecturer in voice at Indiana University - South Bend's Ernestine M. Raclin School of the Arts ("the Raclin School"). (DE ## 27 ¶ 8, 89-3 at 11.) Initially, plaintiff was hired for the position because of her "vast experience in both teaching and performing." (DE # 89-3 at 15.) She was paid a

---

[1] As defendants correctly point out, plaintiff has failed to include a section of her response brief labeled "Statement of Genuine Disputes" in accordance with Local Rule 56-1. However, plaintiff provides a section titled "Plaintiff's Statement of Genuine Issues" (DE # 88 at 3-12) which largely overlaps with defendants' "Statement of Material Facts" (DE # 83 at 127), but also contains some different facts. The court has reviewed these opposing "statements." The court considers facts in defendants' statement to be disputed when plaintiff's statement contains a fact or facts that contradict defendants' asserted facts.

salary of $30,000, which was the same amount previously budgeted for a lecturer in music theory position. (DE ## 83 at 4, 83-7, 83-9.) Plaintiff was tasked with classroom responsibilities, assisting students in recitals, and conducting the campus chorus. (DE # 89-3 at 38.)

In August 2006, plaintiff was hired as a full-time voice lecturer at the Raclin School, with a starting salary of $30,750, with the $750 raise due to the "legislature's percentage increase across the board for faculty members. It was a cost of living [adjustment.]" (DE # 89-3 at 57, 63.) Her responsibilities remained the same as when she was a "visiting" lecturer, although she no longer taught choral music. (*Id*. at 63.) Plaintiff was expected to meet a "full time equivalent" ("FTE") to fulfill her duties as a lecturer, namely, teaching "12 credit hours per semester or the equivalent." (DE ## 89-4 at 23, 89-6 at 22.) This same FTE of 12 credit hours was required of all lecturers, absent a special arrangement. (DE # 89-5 at 23.)

Defendants note that plaintiff failed to meet one-hundred percent of her FTE requirements in multiple semesters during her time as a full-time lecturer. (DE ## 83 ¶¶ 38–45, 83-10.) Although plaintiff does not deny defendants' assertion on this matter, she points out that she performed other tasks aside from normal teaching duties. For a six-month period from January 2008 to June 2008, plaintiff served as the acting area coordinator while Dr. David Barton was on sabbatical. (DE ## 89-3 at 31–32, 89-4 at 29.) During that time, she was responsible for "hiring and firing adjuncts, answering

2

student complaints, [and] answering problems with faculty." (DE # 89-3 at 87.) Plaintiff did not receive extra pay for serving as the acting coordinator. (DE # 89-4 at 30.)

Additionally, plaintiff asserts that she was expected to perform music (presumably a vocal performance) as part of her position. (DE # 88 at 11.) Although plaintiff is not aware of a written requirement to perform, she notes that her obligation to perform was cited in her performance reviews by Dr. Marvin Curtis.[2] (DE # 89-5 at 35–36.) Specifically, Curtis wrote "[i]t is expected that Professor Purcell be a more active performer." (DE # 89-21 at 1.) However, defendants deny that plaintiff was required to perform. (DE # 90 at 5.)

Plaintiff was notified on April 19, 2011 that she would not be reappointed for the 2012-2013 academic year. (DE # 89-14.) Her employment with the school effectively ended on June 30, 2012. (DE # 89-3 at 140.)

Plaintiff then filed the instant suit against Indiana University (improperly sued as "Indiana University South Bend"), the Indiana University Board of Trustees, the President of Indiana University (Michael A. McRobbie), the Chancellor of Indiana University South Bend (Una Mae Reck), the State of Indiana[3], and Marvin Curtis (collectively, "defendants"). (DE # 27.) Plaintiff alleges violations of (1) the Age

---

[2] Curtis is the current dean of the Raclin School. (DE # 89-5 at 8.)

[3] The State of Indiana was dismissed from the action on February 4, 2014. (DE # 42.)

3

Discrimination in Employment Act (ADEA); (2) Title VII of the Civil Rights Act of 1964; (3) the Equal Pay Act; and, (4) Article I, Section 23 of the Indiana Constitution. (*Id.*)

Defendants moved to dismiss plaintiff's ADEA, Title VII, and Indiana constitutional claims. (DE # 29.) The court issued an order dismissing plaintiff's ADEA claim in its entirety and also dismissing the Title VII claim against the individual defendants and as it relates to the decision not to renew plaintiff's employment for another year of service as a lecturer. (DE # 49.) The remaining defendants have filed a motion for summary judgment. (DE # 81.) The motion has been fully briefed and is ripe for ruling.

## II. LEGAL STANDARD

Defendants have moved for summary judgment. FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

### III.     DISCUSSION

#### A.     Title VII and Indiana Constitutional Claims

Defendants move for summary judgment on all remaining claims. (DE # 81.) Regarding plaintiff's Title VII claim, defendants argue both that the claim is time-barred by the statute of limitations and that plaintiff fails to establish a *prima facie* case of sex discrimination. (DE # 82 at 4.) Concerning plaintiff's claim under Article I, Section 23 of the Indiana Constitution, defendants argue that judgment should be entered because

Indiana courts have not explicitly recognized a private right of action for monetary damages under the Indiana Constitution. (DE # 82 at 23 (citing *Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007)).)

Plaintiff does not oppose defendants' motion as to these two claims. (DE # 88 at 1, n.1.) Plaintiff "opposes the [motion for summary judgment] only on the Equal Pay Act claim." (*Id.*) Instead, "[p]laintiff stipulates to the dismissal of claims brought under Title VII and the Indiana Constitution." (*Id.*) Accordingly, plaintiff's Title VII and Indiana Constitutional claims are dismissed. The court now turns to plaintiff's Equal Pay Act claim.

    B.    *Equal Pay Act Claim*

Plaintiff brings a claim alleging that she was paid less than male lecturers in music, specifically the members of the Euclid Quartet, due to her gender. (DE # 27 ¶¶ 32, 52-55.) The Euclid Quartet was a string quartet hired in 2007 to serve as the Raclin School's new quartet in residence, replacing the outgoing Avalon Quartet. (DE # 89-3 at 13, 17, 44.) The members of the Euclid Quartet were hired as lecturers to teach classes at the Raclin School. (DE ## 89-3 at 71–72, 89-4 at 32.) Additionally, the Raclin School maintains the quartet in residence with the expectation that the group will perform off-campus. (DE # 89-6 at 55.) The quartet serves the purpose of boosting the school's reputation and bringing national and international attention to the school. (*Id.* at 36, 55.)

6

>                    *i.*     *The Prima Facie Case*

In order for this Equal Pay Act claim to survive summary judgment, plaintiff must first establish a *prima facie* case of wage discrimination. *See Bartlett v. NIBCO Inc.*, No. 3:08-CV-597, 2010 WL 1779887, at *7 (N.D. Ind. Apr. 28, 2010). To establish a *prima facie* case of wage discrimination, plaintiff must "show that: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Cullen v. Ind. Univ. Bd. Of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003).

As to the first requirement, plaintiff asserts generally that she was paid "less than similarly situated male faculty performers." (DE # 88 at 8, 15.) However, she specifically bases her argument on her salary disparity with the four members of the Euclid Quartet, who were all male. (DE # 88 at 15.) The members of the Euclid Quartet were each paid $40,000 per year, while plaintiff was only paid $30,750 per year. (DE ## 83-3 at 30, 83-5 at 5, 89-3 at 57.) The Euclid Quartet's salary was inherited from the Avalon Quartet. (DE # 83-2 at 46.) Thus, plaintiff has met the first prong of establishing her *prima facie* case.

For the second prong, "the crucial inquiry is whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical." *Cullen*, 338 F.3d at 698 (internal quotation marks omitted). Both plaintiff and the members of the Quartet were classified as "lecturers" by the Raclin School. (DE ## 89-3 at 63, 89-4 at 32.) All of these individuals were experienced musicians who

taught students at the Raclin School. (*See* DE # 89-3 at 71–72.) Thus, a common core exists between the two positions.

Next, once the plaintiff establishes a common core, "the court must ask whether any additional tasks make the jobs 'substantially different.'" *Cullen*, 338 F.3d at 698. Although plaintiff and other lecturers at the Raclin School had a full or "one-hundred percent" teaching load, it is undisputed that the Euclid Quartet had a different assignment due to a "special arrangement." (DE # 89-5 at 18–19, 23.) Specifically, the Euclid Quartet had a fifty percent teaching load "because they were performers and they were assigned differently than [plaintiff]." (*Id.* at 19.) Defendants argue that the Euclid Quartet's dual responsibilities to perform and teach made their position substantially different than plaintiff's position, justifying the difference in pay. However, construing the facts in the light most favorable to the non-moving party, plaintiff was also required to engage in performances. (DE # 89-21 at 1.)

But, in assessing whether two jobs require equal skill, effort, and responsibility, the court must examine "the duties *actually performed* by each employee" and not the job description or title. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1461 (7th Cir. 1994) (emphasis added). Thus, whether or not defendants expected plaintiff to engage in performances is immaterial because there is no dispute as to the fact that, unlike the members of the Euclid Quartet, she was not actually performing music. (*See* DE # 89-3 at 73 ("As I said, I had stopped performing professionally.").)

Based on the duties actually performed by plaintiff, her position did not require substantially similar skill, effort and responsibilities to the positions of the members of the Euclid Quartet. First, the Euclid Quartet members needed to be able to teach and perform, whereas plaintiff's position did not require the skill necessary to be an active performer. Second, the Euclid Quartet members exerted different effort than plaintiff because they traveled and performed internationally in addition to their obligation to teach. Thirdly, the Euclid Quartet members had a greater responsibility than plaintiff because they served as a public face for the Raclin School and impacted the School's reputation around the world in a way that plaintiff did not. (*See* DE # 89-6 at 55.) Therefore, the positions did not constitute equal work.

Since plaintiff has not met the second prong of this test—and no genuine issue of material fact remains as to this prong—the court finds that plaintiff has failed to establish a *prima facie* case of wage discrimination and summary judgment is appropriate.

    ii.    *Affirmative Defense*

Even if plaintiff had established a *prima facie* case, her claim would still fail due to defendants' affirmative defense. Once a plaintiff establishes a *prima facie* case, the burden of persuasion shifts to the employer to prove one of four statutory affirmative defenses. *Cullen*, 338 F.3d at 702. The employer has the opportunity to show that "the pay disparity [was] due to: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other

than sex." *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989) (citing 29 U.S.C. § 206(d)(1)).

Defendants assert the fourth affirmative defense (i.e., a differential based on any factor other than sex) which is "a broad catch-all exception [that] embraces an almost limitless number of factors, so long as they do not involve sex." Dey, 28 F.3d at 1462 (7th Cir. 1994). Specifically, defendants assert that members of the Euclid Quartet received higher salaries than plaintiff due to their higher market value. (DE # 82 at 17, 22.) In assessing this affirmative defense, "it is not [the court's] province to second-guess the employer's business judgment." *Dey*, 28 F.3d at 1462. Accordingly, "we ask only whether the factor is bona fide, whether it has been discriminatorily applied and . . . whether it may have a discriminatory effect." *Id*. In other words, "[t]he justification need not be a 'good reason,' but merely a gender-neutral one." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630 (7th Cir. 2008).

Plaintiff contends that market value is not an appropriate "factor other than sex" in this case and cites to the EEOC Compliance Manual which states that "market value qualifies as a factor other than sex only if the employer proves that it assessed the marketplace value of the particular individuals job-related qualification, and any compensation disparity is not based on sex." *EEOC Compliance Manual*, § 10-IV(F)(2)(g). Plaintiff argues that genuine issues of fact exist as to whether defendants actually made the required assessment of the marketplace prior to awarding a higher salary to the Euclid Quartet. (DE # 88 at 17.)

However, the undisputed facts indicate that Dr. Alfred Guillaume, then the Vice Chancellor for Academic Affairs at Indiana University - South Bend, did assess the marketplace value of a string quartet. Guillaume determined that a $40,000 salary was necessary to attract a new resident quartet, and that the old quartet had left in part due to salary concerns. (DE # 83-5 at 6.) Even plaintiff seems to recognize that this was Guillaume's reasoning, as in her response brief she quotes his assessment that "lowering that salary would jeopardize that opportunity" to "hire the best quartet that [he] could find." (DE ## 83-5 at 8, 88 at 9.) Additionally, defendants note that professional string quartets in residence are rare, and thus there was a relatively small applicant pool from which to draw. (*See* DE # 83-2 at 41); *see also Cullen*, 338 F.3d at 703 (approving pay differences based on market forces where a higher salary was necessary to attract a candidate from a small national applicant pool).

In a further attempt to discredit defendants' affirmative defense, plaintiff cites another statement from the EEOC compliance manual that "[p]rior salary alone is not sufficient to justify a compensation disparity." *EEOC Compliance Manual*, § 10-IV(F)(2)(g). This statement applies to the prior salaries of job candidates for the open position, not the prior salaries for individuals who once held the position in question. *See id*. Regardless, in the case at hand, the prior salaries awarded to the Avalon Quartet were not a reflection of sex-based compensation discrimination, and therefore do not run afoul of the EEOC Compliance Manual. *See id*. It is undisputed that the Avalon Quartet contained both male and female members who were all paid at the

same rate. (DE ## 83-3 at 6, 83-14.) Therefore, the Avalon Quartet's compensation, upon which the Euclid Quartet's compensation was based, was not the result of gender discrimination.

Since this is a legitimate, nondiscriminatory reason for the difference in pay, and since there is no genuine issue of material fact over its validity, summary judgment is appropriate on this claim. *See Rowels v. Ill. Dep't of Employment Sec.*, No. 99 C 6450, 2004 WL 1243870, at *2 (N.D. Ill. June 8. 2004).

## IV. CONCLUSION

For the reasons set forth above, plaintiff's claims pursuant to Title VII of the Civil Rights Act of 1964 and Article I, Section 23 of the Indiana Constitution are **DISMISSED**. Defendants' motion for summary judgment (DE # 81) is **GRANTED IN PART** as to plaintiff's Equal Pay Act claim**.** As to all other claims, the motion is **DENIED AS MOOT**. Because no claims remain against any defendants in this case, the clerk is to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendants and against plaintiff Alicia Purcell, who shall take nothing by way of her complaint.

**SO ORDERED.**

Date: February 2, 2017

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT